UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RAYMOND LEAVITT, <br><br> Plaintiff <br><br> v. <br><br> CORRECTIONAL MEDICAL <br> SERVICES, INC., *et al.*, <br><br> Defendants | ) <br> ) <br> ) <br> ) <br> ) Civ. No. 8-132-B-W <br> ) <br> ) <br> ) <br> ) <br> ) |

**ORDER DENYING MOTION
FOR APPOINTMENT OF COUNSEL**

On December 29, 2008, Raymond Leavitt filed his second motion for appointment of counsel (Docket No. 64).[1] "There is no absolute constitutional right to a free lawyer in a civil case." Desrosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991). "To determine whether there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the total situation, focusing, inter alia, on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself." Id. at 24. In the context of habeas corpus litigation involving a state court prisoner, this Court has said that it will consider "the indigent's ability to conduct whatever factual investigation is necessary to support his claim, the complexity of the factual and legal issues involved, and the capability of the indigent litigant to present the case." Carmichael v. Warden, Me. State Prison, 346 F. Supp. 2d 207, 209 (D. Me. 2004).

When I apply this Court's Carmichael factors to this case, the discretionary decision as to whether to seek counsel for Leavitt is a close call, although on balance

---

[1] Leavitt filed his first motion for appointment of counsel on June 19, 2008. At that time I advised the plaintiff to contact legal aid organizations as the court did not normally appoint counsel in civil cases. (See Doc. Nos. 15 & 16).

there is no due process concern that would require the Court to seek counsel for him. On the one hand, Leavitt appears to be a relatively capable *pro se* prisoner litigator. By this I mean it is unlikely that he will fail to respond appropriately to defense motions or otherwise find himself in serious procedural difficulties because of his inability to follow rules of procedure. He has already navigated successfully through sixty-seven different docket entries and has clearly stated his various claims. Leavitt indicates in his affidavit that he has received some assistance from a "former member of the National Lawyer's Guild" who is a fellow prisoner, but not a lawyer. In any event, based upon the pleadings filed to date, Leavitt appears more capable of proceeding *pro se* than do many prisoner litigators.

Turning to the complexity of this litigation, there is no question but that Leavitt has opened a Pandora's Box of factual and legal issues by pleading counts under both the United States Constitution and Title II of the ADA. Leavitt claims he was inappropriately denied medical treatment for a serious medical condition for over fifteen months in spite of the fact that the State and its medical services provider, Correctional Medical Services, Inc., had full knowledge of his condition and his need for appropriate medications. The factual issue of whether or not Leavitt received the medications and whether or not the defendants knew or should have known that he wanted them administered to him are relatively straightforward. The factual issue of whether or not the treatment he received (or failed to receive) was medically appropriate presents greater complexity.

As Leavitt points out in his affidavit, he really needs to have a medical expert available to assist with the investigation and presentation of his case, just as the medical

defendants intend to offer expert testimony. Clearly, Leavitt needs assistance in the factual investigation needed to support his claim. However, the appointment of counsel will not necessarily provide that assistance. Even if the court were to appoint counsel in this situation, there are no funds available to this court to hire an expert medical witness to counter the defendants' medical expert(s). Thus, the appointment of counsel in this case would not really assist with the necessary factual investigation and could well be an exercise in futility. To the extent Leavitt is able to counter the defendants' experts with lay testimony and his own observations, he is able to do that sort of factual investigation without the assistance of an attorney. To the extent Leavitt needs expert medical testimony to counter the defendants' expert witnesses, the appointment of counsel will not improve his prospects at all.

Viewing the matter in its entirety, I do not believe that this case presents those exceptional circumstances wherein the appointment of counsel would be constitutionally required. See Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir. 1986) (citing Childs v. Duckworth, 705 F.2d 915, 922 (7th Cir. 1983), for the proposition that there is no right to appointment of counsel unless the denial of proper representation would result in fundamental unfairness impinging on due process rights).

Accordingly, the Motion for Appointment of Counsel is hereby **DENIED**.

### CERTIFICATE

Any objections to this order shall be filed in accordance with Fed. R. Civ. P. 72.

*So Ordered.*

Dated: January 7, 2009

                                              /s/Margaret J. Kravchuk
                                              U.S. Magistrate Judge