UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RAYMOND LEAVITT, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civ. No. 8-132-B-W |
| | ) | |
| CORRECTIONAL MEDICAL | ) | |
| SERVICES, INC., *et al.*, | ) | |
| | ) | |
| Defendants | ) | |

**RECOMMENDED DECISION ON MOTION TO DISMISS**
**(Doc. No. 43)**

Raymond Leavitt is an inmate at the Maine State Prison who is suing multiple defendants alleging that he has received constitutionally inadequate medical care as an HIV-infected prisoner, in violation of the Eighth Amendment, and that the defendants' alleged indifference to his condition also violated his rights under the Americans with Disabilities Act. One of the defendants, Department of Corrections Commissioner Martin Magnusson, has filed a motion to dismiss (Doc. No. 43) on the ground that the amended complaint fails to state a claim against him. I recommend that the Court grant the motion with regard to the Eighth Amendment claim. I also recommend that the Court grant the motion with respect to any claim that Magnusson is individually liable under Title II of the ADA. However, I recommend that the Court deny the motion to the extent that Magnusson seeks judgment on an official capacity Title II claim.

**The Allegations**

For purposes of ruling on this motion to dismiss, the operative complaint is the October 17, 2008, amended complaint, as amended to add a claim against Defendant Al

Cichon.  (Doc. Nos. 33, 44.)  Pursuant to my order of December 9, 2008 (Doc. No. 53), the Clerk has newly entered all of Leavitt's pleadings in one convenient location on the docket (Second Am. Compl., Doc. No. 54).

Leavitt alleges that his need for HIV treatment was deliberately disregarded by the staff of Correctional Medical Services (CMS), a company that provides contract medical services to inmates on behalf of the Department of Corrections, as well as by prison medical staff.  (Id. ¶¶ 4-7, 11-20, 32, 35.)  According to the complaint, upon his arrival at the jail in February 2007, Leavitt informed a prison nurse and CMS employees that he was HIV positive, was medicated for his condition, and wanted to be put on his medication as soon as possible.  (Id. ¶ 15.)   In May 2007, Leavitt was taken to visit Maine Virology to see a doctor.  He explained that he was not receiving medication for HIV that he had taken for 13 years prior to his incarceration and reported various symptoms of his sickness.  The doctor at Maine Virology requested that blood work be performed at the prison so that he could determine whether Leavitt's HIV medication should be reinstituted and that Leavitt be returned within 30 days with the results of the blood work.  (Id. ¶ 16.)  The prison did not return Leavitt to Maine Virology until December 2007, roughly seven months later.  (Id. ¶ 17.)  Leavitt complains of significant emotional distress during this lapse in his treatment as well as unnecessary pain and discomfort caused by the physical symptoms that the medication would have kept at bay. He maintains that the CMS staffers at the prison and the prison's own medical staff consciously failed or refused to timely return him to Maine Virology or to timely perform the necessary lab work or report it to Maine Virology for purposes of his treatment.  (Id.

¶¶ 17-18.)  Leavitt states that, during his seven month wait, he repeatedly inquired of CMS staff and prison staff whether his medical needs would be addressed.  (Id. ¶ 19.)

At his December visit to Maine Virology, Leavitt received a prescription for the HIV medication he had taken prior to incarceration.  The doctor at Maine Virology also ordered additional lab work and specified that Leavitt should be returned in 30 days.  This time, Leavitt waited over 90 days before his return, which finally happened on March 12, 2008.  According to Leavitt, despite the delay, his treatment was again frustrated because the needed lab work was never performed by CMS or the prison medical staff.  He returned to the prison with a new prescription to continue his medication and Maine Virology again requested that blood work be performed and that Leavitt be returned within 30 days.  (Id. ¶¶ 20.[1])

On April 23, 2008, Leavitt filed a grievance concerning this medical treatment or lack thereof, and marked it as an emergency grievance.  This grievance went to defendant Robert Costigan, who denied the grievance on May 23, 2008, indicating that Leavitt was receiving adequate treatment.  (Id. ¶ 21.)

Leavitt was returned to Maine Virology on May 25, 2008.  He alleges that he told a physician's assistant there that he was not on any medication at that time and that she told him he should have been taking the medications for "quite some time."  (Id. ¶ 22.)  Leavitt reports that he was also told that he could not start receiving Hepatitis C treatment until his HIV treatment was under control.  It was again ordered that his medication begin and that he be placed on another medication to address a thrush symptom.  (Id. ¶ 23.)

Leavitt appealed the denial of his grievance to defendant Jeffrey Merrill, Warden of the Maine State Prison.  Allegedly, Merrill did not timely address the appeal,

---

[1]     There are two paragraphs 20.

prolonging Leavitt's injury.  Merrill concluded that Leavitt was receiving adequate treatment because he was prescribed the needed medication, even though Leavitt had informed him that he was not receiving the medication.  (Id. ¶ 24.)

Leavitt appealed Merrill's decision to Defendant Martin Magnusson, Commissioner of the Maine Department of Corrections, on July 3, 2008.  (Id. ¶ 25.)  On July 7, 2008, Leavitt began receiving his prescribed medication, roughly 15 months after he first requested it.  (Id. ¶ 26.)

Defendant Magnusson subsequently denied Leavitt's appeal based on a finding that it was untimely.  (Id. ¶ 28.)  Leavitt alleges that his appeal was timely, but that either Costigan failed to timely forward the appeal to Magnusson or else Magnusson falsely claimed the appeal was untimely "to evade the underlying facts."  (Id. ¶ 29.)  Although Leavitt alleges that Magnusson "consciously" and "deliberately" refused to take action on his appeal (Id. ¶ 30), he does not allege that Magnusson had any personal knowledge of his HIV condition or of the denial of his medication.  Rather, he alleges that the CMS staff and the prison medical staff (and only they) were "aware that plaintiff had and has the HIV and that to deny and otherwise refuse to treat him, was putting plaintiff at risk of serious physical and mental harm . . . ."  (Id. ¶ 31;  see also id. ¶ 32.)  Leavitt also attributes the "set up" of the prison's medical program to the CMS staff and prison staff defendants, not including the prison official defendants such as Magnusson.  (Id. ¶ 35.)

Leavitt attached to his amended complaint, filed October 17, 2008, a copy of the grievance decisions issued by Costigan, Merrill, and Magnusson.  (Doc. No. 33-2;  or see Doc. No. 54-2.)  Commissioner Magnusson's August 4, 2008, denial letter for Leavitt's third-level appeal does deny the appeal based on an assertion that it was untimely.

4

However, it also notes in its concluding paragraph that "the Prison medical department has confirmed that [you are][2] now receiving antiviral medications."  (Id. at 8.)

### Discussion

Defendant Magnusson contends that Leavitt's amended complaint fails to state a viable claim against him.  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim or complaint may be dismissed if it fails to state a claim upon which relief can be granted.  When reviewing a motion to dismiss, the Court must determine whether the complaint asserts sufficient facts to support "a plausible entitlement to relief."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1967 (2007).  Detailed factual allegations are not essential, so long as the allegations give fair notice to the defendants what they are being sued for and the factual basis for each claim.  Thomas v. Rhode Island, 542 F.3d 944, 948 (1st Cir. 2008).

Leavitt asserts two claims against Magnusson, both arising from the extended failure to provide him with his doctor-prescribed HIV medication.  Based on this failure, Leavitt claims, first, that Magnusson violated his rights under the Eighth Amendment (as applied to the states through the Fourteenth Amendment) by being deliberately indifferent to his serious medical needs, and second, that Magnusson also violated his rights under the Americans with Disabilities Act by discriminatorily denying needed care on account of the fact that Leavitt is HIV-positive.  (Sec. Am. Compl. ¶¶ 41-42.)  Magnusson argues that Leavitt has failed to sufficiently state a claim against him, individually, because Leavitt has "failed to alleged facts sufficient to establish that Martin

---

[2]      Within the brackets, the original reads "are you" instead of "you are," an obvious typographical error.

Magnusson was deliberately indifferent to a substantial risk of harm to the plaintiff, or intentionally discriminated against the plaintiff." (Mot. at 2.)

Magnusson contends that Costigan denied the grievance because CMS was telling Costigan that Leavitt's medication was soon to be provided; that Merrill denied the grievance because CMS told Merrill that the medication had been prescribed; and that he, Magnusson, denied the grievance, in part because it was untimely, but also because the subject of the grievance was that Leavitt was not receiving his prescribed medication, and the record reflected that Leavitt began receiving his medication as of July 7, 2008, a few weeks prior to Magnusson's denial letter of August 4, 2008. (Id. at 2-3.) According to Magnusson, the complaint is deficient because it does not allege any facts suggesting that Magnusson had any subjective awareness of the fact that Leavitt was being denied treatment at any time between Leavitt's incarceration and Magnusson's receipt of his appeal. (Id. at 3-4.) Magnusson offers that, "by the time [he] received the appeal, [Leavitt] was on his medication and the issue resolved." (Id. at 4.) If he was not subjectively aware of Leavitt's situation regarding HIV medication, Magnusson argues, then he could neither be deliberately indifferent to that situation nor discriminate intentionally against Leavitt based on his HIV condition. (Id. at 4-5.) I address this argument in terms of the legal standard applicable to each claim, starting with the Eighth Amendment claim.

### A.    *The Eighth Amendment  Claim against Magnusson*

The Eighth Amendment claim is a claim of cruel and unusual punishment.  In the context of medical treatment afforded to prisoners, this claim depends on "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical

needs." Estelle v. Gamble, 429 U.S. 97, 105-106 (1976).  A clear case of deliberate

indifference would exist if a serious medical need were ignored for the very purpose of

inflicting punishment on a prisoner.  Feeney v. Corr. Med. Serv., Inc. 464 F.3d 158, 161-

162 (1st Cir. 2006).  But "wanton" acts can also suffice, where there is inaction despite

"actual knowledge of impending harm, easily preventable." DesRosiers v. Moran, 949

F.2d 15, 19 (1st Cir. 1991).  Mere inadvertence and negligence do not suffice to meet the

constitutional threshold, but "[t]he requisite state of mind may be manifested by the

officials' response to an inmate's known needs or by denial, delay, or interference with

prescribed health care."  Id.  In sum, the claim has both an objective component and a

subjective component.  On the objective side, the deprivation of needed care must be

sufficiently serious.  On the subjective side, the state of mind of the individual defendant

must be such that a fact finder could fairly conclude that the deprivation arose from

wanton disregard.  Id. at 18-19.

      Commissioner Magnusson's challenge runs exclusively to the subjective

component of Leavitt's constitutional claim.  He does not contend with this motion that

the alleged deprivation of prescribed HIV medications is not sufficiently serious to

support the claim.  Consequently, resolution of the motion turns on the discreet issue of

what Leavitt alleges Commissioner Magnusson was aware of concerning the provision of

medical care to Leavitt by the medical care providers in the Maine State Prison.

      In opposition to the motion to dismiss, Leavitt concedes that "it is true that [he]

was back on his prescribed antiviral medication" when Magnusson received the appeal,

but he argues that "it is still not clear if he has suffered any long term and fatal

consequences as a result of the sixteen Months with no antiviral medications."  (Resp. in

Opposition at 5, Doc. No. 52.)[3]  He contends that it is too early to assume that Magnusson lacked knowledge of his predicament and would like a chance to engage in discovery before any dispositive ruling.  (Id.)

With respect to Magnusson's potential liability as a supervisor, the law is clear that supervisory liability under 42 U.S.C. § 1983 "cannot be predicated on a respondeat superior theory."  Seekamp v. Michaud, 109 F.3d 802, 808 (1st Cir. 1997) (citing Hegarty v. Somerset County, 53 F.3d 1367, 1379 (1st Cir. 1995)).  Rather, the liability must flow from the supervisor's own acts or omissions.  Id.  A supervisor can only be held liable on a theory of supervisory liability if a subordinate's behavior resulted in a constitutional violation and his or her action or inaction was affirmatively linked to this behavior in that "it could be characterized as 'supervisory encouragement, condonation or acquiescence' or 'gross negligence amounting to deliberate indifference.'"  Id. (quoting Lipsett v. Univ. of Puerto Rico, 864 F.2d 881, 902 (1st Cir.1988)).  "Moreover, the indifference required to support supervisory liability under section 1983 must be 'deliberate, reckless or callous.'"  Id. (quoting Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir.1989)).  "The requirement of an 'affirmative link' between the behavior of a subordinate and the action or inaction of his supervisor 'contemplates proof that the supervisor's conduct led inexorably to the constitutional violation.'"  Pineda v. Toomey, 533 F.3d 50, 54 (1st Cir. 2008) (quoting Hegarty, 53 F.3d at 1380).

The allegations of Leavitt's complaint as they pertain to Magnusson and his supervisory liability for any alleged Eighth Amendment violation fall far short of supervisory encouragement, condonation, acquiescence or gross negligence amounting to

---

[3]     Leavitt opines that proof of Magnusson's deliberate indifference is found in his denial of Leavitt's third-level appeal as untimely when it was Defendant Costigan who was the person responsible for the untimely forwarding of Leavitt's third-level grievance to Magnusson.  (Resp. in Opposition at 5.)

deliberate indifference.  Per Leavitt's own explanation in his response to the motion to dismiss, he remained silent toward prison officials until he decided that filing the grievance was essential.  The fact that there may be long-term consequences because of the denial of medication prior to Magnusson's awareness of the complaint does not translate into liability for the actions or inactions that may or may not be responsible for such consequences.  The omission from Leavitt's second amended complaint of any allegation of subjective awareness on the part of Commissioner Magnusson is fatal to the Eighth Amendment claim, as asserted against Commissioner Magnusson, where the allegations reveal that Leavitt began receiving his medications within four days of filing his appeal with the Commissioner.  There is no plausible basis for finding that the Commissioner had any opportunity within this four-day window to exhibit deliberate indifference to Leavitt's need for medication.

**B.      The ADA Claim against Magnusson**

With regards to Leavitt's claim under Title II of the ADA, he must demonstrate (1) that he is a qualified individual with a disability;  (2) that he was denied the benefit of a public entity's services;  and (3) that the denial of services was due to his disability. Kiman v. N. H. Dep't of Corr., 451 F.3d 274, 283 (1st Cir. 2006).  Because "[a]ccess to prescription medications is part of a prison's medical services," the denial of such medications falls within the ambit of the ADA.  Id. at 286-87 (citing United States v. Georgia, 546 U.S. 151, 157 (2006)).

Magnusson's argument in his motion to dismiss is right in that he cannot be held liable in his individual capacity as a supervisor on the ADA claim based on the allegations in the complaint, even assuming there could be liability in an individual

capacity under Title II of the ADA.  See Silk v. City of Chicago, 194 F.3d 788, 797 n.5 (7th Cir. 1999) ("Our case law is clear that a supervisor cannot be held liable in his individual capacity under the ADA.")  There simply is no nexus offered in the complaint between the deprivation in question and the personal conduct of Commissioner Magnusson.  As stated in connection with the previous claim, Leavitt really does not try to challenge the assertion that there is no allegation that Magnusson was involved in a decision to deny prescription medication to Leavitt.

Notwithstanding these obstacles to an individual capacity claim against Magnusson, Leavitt clearly indicates that he is suing Magnusson in his official capacity as well.  (Am. Compl. ¶ 8.)  Leavitt contends that Magnusson has ultimate responsibility for the medical treatment of inmates with HIV because of his position as Commissioner of the Department of Corrections.  An official capacity claim against Magnusson as Commissioner of the Maine Department of Corrections is potentially cognizable.  See Carten v. Kent State Univ., 282 F.3d 391, 396 -97 (6th Cir. 2002) (observing that an official "may be held responsible in an official capacity for violating Title II, which by its terms applies only to 'public entities.'");  accord Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir. 2003);  Bruggeman ex rel. Bruggeman v. Blagojevich, 324 F.3d 906, 912-13 (7th Cir. 2003).  Magnusson has not expressly moved for dismissal of Leavitt's official capacity claim under Title II, which is to say that he has not briefed why an absence of any subjective awareness on his part about Leavitt's personal medical needs would necessarily be dispositive of an official capacity claim brought under Title II of the ADA for the denial of necessary prison medical services.

**Conclusion**

10

Based upon the foregoing, I recommend the court grant the motion to dismiss (Doc. No. 43) and dismiss Magnusson as an individual defendant in this case, although the official capacity claim under Title II of the ADA will remain and Magnusson will therefore remain a named party.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 13, 2009

11