UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RAYMOND LEAVITT,  )<br>  )<br>    Plaintiff,  )<br>  )<br>v.   )<br>  )<br>CORRECTIONAL MEDICAL SERVICES,  )<br>INC., *et al.*,  )<br>  )<br>    Defendants  )<br>  )  | Civ. No. 8-132-B-W |

**RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT BY
DEFENDANTS MERRILL AND COSTIGAN (Doc. No. 45)**

Raymond Leavitt is an inmate at the Maine State Prison who is suing multiple defendants alleging that, as an HIV infected prisoner, he has received inadequate medical care in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment and in violation of Title II of the Americans with Disabilities Act.  Two of the defendants, Maine State Prison Warden Jeffrey Merrill and Prison Administrative Coordinator Robert Costigan, have filed a motion for summary judgment.  (Doc. No. 45.)   Their argument is essentially that they did not have sufficient individual knowledge about the medical decisions related to Leavitt's HIV medication to hold them liable under the Eighth Amendment or Title II of the ADA.  I recommend that the Court deny the motion.

**FACTS**

The following facts are material to the summary judgment motion.  They are drawn from the parties' statements of material facts in accordance with Local Rule 56.  See Doe v. Solvay Pharms., Inc., 350 F. Supp. 2d 257, 259-60 (D. Me. 2004) (outlining the mandatory procedure

for establishing factual predicates needed to support or overcome a summary judgment motion); Toomey v. Unum Life Ins. Co., 324 F. Supp. 2d 220, 221 n.1 (D. Me. 2004) (explaining "the spirit and purpose" of Local Rule 56).

Raymond Leavitt was incarcerated at the Maine State Prison starting February 12, 2007. (Defendants' Statement of Material Facts ¶ 1, Doc. No. 46.) From the date of his incarceration through July 29, 2008, Leavitt filed one grievance concerning HIV medication. (Id. ¶ 2.) That grievance (08-MSP-166) was filed with Robert Costigan, the Grievance Review Officer, on April 24, 2008. (Id. ¶ 3.) In that grievance, Raymond Leavitt alleged that he was not receiving medication for his HIV condition.[1] (Id. ¶ 4.) On April 24, 2008, Robert Costigan also received a copy of a memorandum sent to Leavitt from Violet Hanson, a registered nurse employed by Correctional Medical Services to work at the Maine State Prison. Hanson's memorandum stated that Leavitt's grievance letter had been submitted. (Id. ¶ 5.) The memorandum also stated that a follow-up appointment with the HIV clinic was scheduled, and that his chart would be reviewed for possible medication recommended by the clinic after that visit. (Id. ¶ 6.) Hanson's memorandum also indicated that the results for labs drawn on Leavitt on the previous day would be forwarded to the HIV clinic. (Id. ¶ 7.) On May 1, 2008, Robert Costigan received a new memorandum from Teresa Kesteloot, R.N., Prison Health Services Administrator, an employee of Correctional Medical Services. (Id. ¶ 8.) The memorandum stated that Leavitt was seen by

---

[1] A copy of the grievance form is part of the record. In it, Leavitt provided the following statement:

> Please find enclosed a copy of the letter I sent to CMS stating the need for HIV meds. I've been incarcerated for 20 months, 15 of which have been here and have been refused my HIV meds that I was on at and up until the time of arrest. There is no reason to deny my meds any longer.

(Client Grievance Form, Doc. No. 54-2.) The letter attached to the grievance relates that Leavitt was an inmate at the Maine State Prison on a prior occasion for which he was released in March 2006 and that he was "on the meds" at that time. He complains in the letter that there is "no reason for me to have been denied my meds now as nothing has changed with my medical status or diagnosis." (April 1, 2007, Letter, Doc. No. 54-2 at 2.)

the HIV clinic several times since his arrival in February 2007. (Id. ¶ 9.) Kesteloot's memorandum also indicated that Raymond Leavitt was scheduled for a follow-up visit with the clinic and that consult notes indicated that medication should be started at the next visit to the clinic. (Id. ¶¶ 10-11.) Additionally, Kesteloot's memorandum stated that it appeared Leavitt had been followed appropriately. (Id. ¶ 12.)

The information received from Hanson and Kesteloot formed the basis of Robert Costigan's response to Leavitt's grievance. (Id. ¶ 13.) According to Costigan, he concluded that Leavitt's HIV condition was being monitored by health care professionals and that the issue of medication would be addressed. (Id. ¶ 14.) According to Costigan, he relied on their professional judgment because he had no reason to question it. (Id. ¶ 15.)

On May 28, 2008, Jeffrey Merrill, the Warden/Chief Administrative Officer at the Maine State Prison, received a second level grievance appeal from Leavitt. (Id. ¶ 16.) The appeal, along with the grievance documents and related correspondence, was forwarded to Deputy Warden Leida Dardis, who typically reviews second level grievance appeals at the Prison and drafts a response to the appeal.[2] (Id. ¶ 17.) Thereafter, the Warden reviewed the grievance documents and related correspondence forwarded to him by Deputy Warden Dardis. (Id. ¶ 19.) In addition, the Warden also reviewed two updates to Robert Costigan from Violet Hanson, R.N., dated June 24, 2008, and June 30, 2008, regarding Leavitt's treatment. (Id. ¶ 22.) The

---

[2] A copy of the appeal is also available in the record. In it, Leavitt stated:

> At the time of my current incarceration I was on meds prescribed by Positive Health Care of Portland for HIV+. Since then (21 mos ago) I have been denied my meds and feel discriminated against being HIV+. Even after 4 trips to the Virology Clinic in Portland with a scheduled appointment pending, my [im]mune system is low and causing (thrush) in my mouth (sores) due to lack of meds. It should not have taken this amount of time to continue my meds for HIV sickness. I appeal to the Chief Adminstrat[ive] Officer to see that my meds are restarted and discrimination stopped.

(Client's Appeal of Grievance Response, Doc. No. 47-2 at 10.)

June 24 update stated that Leavitt was scheduled for a follow-up visit at the HIV clinic on June 25, 2008.  The June 30 update stated that Leavitt was prescribed two antiviral medications for his HIV condition at the June 25 clinic visit.  (Id. ¶ 23.)  According to Warden Merrill, he believed the responses from the health care professionals were appropriate.  (Id. ¶ 24.)  Warden Merrill offers that he therefore denied the appeal (on July 1) in reliance on the professional judgment of the care providers, stating that he had no reason to question their judgment.  (Id. ¶ 25.)

Raymond Leavitt finally began to receive medication for his HIV condition on July 7, 2008.  (Id. ¶ 26.)

Leavitt offers a counter statement of material facts, which he supports with an affidavit.  Leavitt primarily adopts the defendants' factual presentation, but makes three points in opposition.  (Counter Statement ¶¶ 1-4, Doc. No. 56.)  First, Leavitt observes that neither Costigan nor Merrill ever inquired of him why he requested that his grievance be expedited.  (Leavitt Aff. ¶ 3., Doc. No. 56-2.)  Second, according to Leavitt, it is common knowledge within the Maine State Prison "that there were problems with the way that defendant Todd Tritch was running the Maine State Prison health care system."  (Id. ¶ 4.)  Leavitt offers that he will introduce "many copies of grievances that have been filed . . . to show that defendants Costigan and Merrill knew that there were, and still are, serious problems with the manner in which health care is provided at the Maine State Prison."  (Id. ¶ 5.)

The defendants move to strike Leavitt's factual offerings based on his noncompliance with Local Rule 56, particularly his failure to "cite the record."  (Reply Statement ¶¶ 3-4, Doc. No. 63.)  This request to strike is overruled.  Leavitt's six-paragraph affidavit, filed as an attachment to his counter statement, is a sufficient record source to at least introduce his statements, regardless of whether the counter statement cites the affidavit in an appropriate

4

manner. This conclusion turns entirely on three factors. First, the affidavit is short and straight-forward and can be (indeed, has been) meaningfully addressed by the defendants in a reply statement. Second, Leavitt should be accorded some leniency in regard to compliance with Local Rule 56 because he is a *pro se* litigant and has repeatedly sought to have counsel appointed to avoid this kind of problem and other practical hazards of being unrepresented. Third, it will not put the Court in the position of becoming the lawyer for the unrepresented litigant if it merely considers Leavitt's factual offerings. Clarke v. Blais, 473 F. Supp. 2d 124, 128-29 (D. Me. 2007).

Beyond these technical objections, the defendants admit that they did not expedite Leavitt's appeal (Reply Statement ¶ 3), but they deny and object to Leavitt's contention about what is common knowledge within the prison when it comes to the way in which the prison health services program is managed. (Id. ¶ 4.) The defendants object that a statement by Leavitt concerning common knowledge within the prison is not a sufficient evidentiary basis to attribute actual knowledge to them of any problem with the health care program. (Id., responding to ¶ 4 of Leavitt Aff.) This objection is sustained. At the very least, Leavitt would need to divulge the underlying factual basis for his conclusory statement about what is common knowledge, which is something he has not offered. The mere assertion that "there were problems" with Mr. Tritch's management of prison health services is too vague a reference to support the kind of inference-drawing that Leavitt is requesting. Finally, the defendants object to Leavitt's statement about what may be revealed by "many copies of grievances" that Leavitt would introduce at trial. The defendants object because Leavitt was required to place any such evidence in the summary judgment record at this point in time in order to demonstrate that a trial-worthy issue exists. (Id., responding to ¶ 5 of Leavitt Aff.) I sustain this objection as well. Leavitt cannot gain any

inferential findings in his favor by merely alluding to the existence of circumstantial evidence to support the inference. He must actually produce the evidence at the summary judgment stage.

## DISCUSSION

The defendants argue that they cannot be liable to Leavitt because they were not personally aware of any endangerment arising from the treatment Leavitt received from prison health care staff. According to them, they reasonably relied on the representations of prison health care providers when they denied Leavitt's grievance, having no basis to question the providers' representations or judgment. The defendants posit that there is an absence of a genuine issue of fact concerning their subjective knowledge of a serious medical need and that this circumstance precludes judgment in Leavitt's favor on either of his claims, as a matter of law. (Mot. Summ. J. at 3, 6, Doc. No. 45.) In opposition, Leavitt argues that these two prison administrators should be liable for the alleged deprivation because they both had an opportunity to assist him, but refused to do so, even refusing to speak with him in the course of their investigation or to expedite his grievance. He believes that his written representations about the prolonged denial of his HIV medications should have moved them to act on his behalf. (Opposition Mem. at 1-2.)

Merrill and Costigan are entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In defending this motion Leavitt "may not rely on conclusory allegations, improbable inferences, or unsupported speculation but must, instead, 'set forth specific facts showing that there is a genuine issue for trial.'" Pineda v.

Toomey, 533 F.3d 50, 53 -54 (1st Cir. 2008) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).

A.  Count I—cruel and unusual punishment

Apropos the Eighth Amendment inquiry, it is the defendants' position that they responded to the grievance concerning medical care filed by Leavitt and that this is not a case in which Leavitt's need for treatment was so obvious that these two defendants without medical training would "'easily recognize the necessity'" of the drug treatment requested. (Mot. Summ. J. at 3, quoting Estelle v. Gamble, 429 U.S. 97, 107 (1976).) The defendants insist that they were relying on presumably reliable medical care providers concerning Leavitt's medication needs. (Id. at 3-4.) In support of their motion, the defendants do not offer any statement of fact of a kind that would call into question the seriousness of Leavitt's medical condition. Rather, they seek summary judgment based on the assertion, offered in argument, that this is not the kind of condition for which Leavitt's need would be obvious to them. By extension, they contend that their conduct could not fairly be regarded as wanton because they relied on assurances offered by the prison health care providers.

The Eighth Amendment claim is a claim of cruel and unusual punishment. In the context of medical treatment afforded to prisoners, this claim depends on "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 105-106. A clear case of deliberate indifference would exist if a serious medical need were ignored for the very purpose of inflicting punishment on a prisoner. Feeney v. Corr. Med. Serv., Inc. 464 F.3d 158, 161-162 (1st Cir. 2006). But "wanton" acts can also suffice, where there is inaction despite "actual knowledge of impending harm, easily preventable." DesRosiers v. Moran, 949 F.2d 15, 19 (1st Cir. 1991). Mere inadvertence and negligence do not suffice to meet the

7

constitutional threshold, but "[t]he requisite state of mind may be manifested by the officials' response to an inmate's known needs or by denial, delay, or interference with prescribed health care." Id. "[P]rison officials must be shown to have been subjectively aware of a condition requiring their intervention." Mahan v. Plymouth County House of Corr., 64 F.3d 14, 18 (1st Cir. 1995). Practical proof of such wantonness involves an objective component and a subjective component. On the objective side, the deprivation of needed care must be sufficiently serious. On the subjective side, the state of mind of the individual defendant must be such that a fact finder could fairly conclude that the deprivation arose from wanton disregard for such a deprivation. Id. at 18-19.

     Here, Costigan, the prison's administrative coordinator, and Merrill, the warden, received a grievance from Leavitt indicating that his preexisting prescription for HIV medication was not being filled by the prison health care providers and that it had taken them over a year to independently review Leavitt's medical condition and recommence his medication. Viewed in the light most favorable to Leavitt, this fact supports a finding that both Costigan and Merrill were aware that a serious medical condition had been left unresolved by the prison health care providers for a significant amount of time. This solitary fact is certainly quite troubling and would likely make an impression on the average person. HIV is the sort of infection that the common lay person certainly would have some awareness of as a very serious and life-threatening disease. A serious medical need is "one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gaudreault v. Salem, 923 F.2d 203, 208 (1st Cir. 1990). Although the average lay person would not be able to discuss HIV in an expert fashion, it is not a stretch to find that the average lay person would appreciate the need for a doctor's attention in

this predicament, particularly given Leavitt's representation that he was previously prescribed HIV medications and was not seeking a new diagnosis. Moreover, courts have generally recognized that "HIV constitutes a serious medical need." Thompson v. Neeb, No. 7:07cv92, 2007 U.S. Dist. Lexis 64651, *12-*13, 2007 WL 2570220, *4 (W.D. Va. Aug. 31, 2007) (order on mot. to dismiss, collecting cases). See also, e.g., Taylor v. Barnett, 105 F. Supp. 2d 483, 487 (E.D. Va. 2000) (order on mot. for release of pl.'s med. records) ("HIV-positive inmates and inmates suffering from the AIDS virus clearly suffer from serious medical needs."); Hatten v. Prison Health Servs., No. 2:05-cv-6-FtM-99DNF, 2006 U.S. Dist. Lexis 65143, *16, 2006 WL 4792785, *5 (M.D. Fla. Sept. 13, 2006) (observing, on motion to dismiss converted to a motion for summary judgment, that "[t]he Eleventh Circuit has found that the HIV virus constitutes a 'serious medical need,'" and that the existence of a serious medical need was established based on "the alleged complete cessation of Plaintiff's HIV medication for . . . fourteen days or at most twenty-eight days," where the record established that the defendants were treating the plaintiff's HIV-related problems and the documents attached to the defendants' motion did "not negate the underlying claim").

In this case, Leavitt might be faulted for failing to produce evidence in opposition to this summary judgment motion in order to establish "on the record" that his HIV was a serious medical condition. Leavitt fails to even address aspects of his condition in his summary judgment affidavit, though he has offered sworn testimony previously to the effect that he suffers from HIV and must take daily medication to keep the virus suppressed. (Leavitt Aff. in Support of Mot. for Appt. of Counsel ¶ 2, Doc. No. 64-2.) However, as this motion is configured, the defendants are really challenging the Eighth Amendment claim based on the nature of their subjective response to Leavitt's predicament. The inquiry into either man's subjective state of

9

mind requires the Court to consider what information was known to him when he considered Leavitt's plea for help.  That information included statements by Leavitt to the effect that he had received HIV medications during a previous stay at the prison and that he had been denied his HIV medications for more than a year during his current stay.

I proceed from the premise that Costigan and Merrill were on notice of a serious medical condition requiring a doctor's attention, although the record only reflects that they were put on notice belatedly, after Leavitt filed his grievance.  Can their response to that notice fairly be characterized as deliberate indifference?  The defendants argue that they were not deliberately indifferent to Leavitt's need because "[t]his is not a case in which the medical need was one that 'is so obvious that even a lay person would easily recognize the necessity' for intervention." (Mot. at 3, quoting Estelle, 429 U.S. at 107.)  Thus, they argue, they acted reasonably by relying on representations from the prison health care providers that Leavitt "was being monitored not only by them, but also by an outside HIV clinic, and that the issue of medication was being addressed." (Id.)

Implicit in the defendants' argument is a recognition that they could have intervened in this matter, though they claim it was not easy for them to appreciate the "necessity" for intervention.  The picture that this case presents is a disturbing one.  Costigan and Merrill were presented with a grievance in which Leavitt reported being denied his HIV medications for over a year.  The defendants have not introduced any evidence disputing this fact or suggesting that they were not aware of the length of time that Leavitt's HIV medications were disrupted.  Despite their awareness of the prolonged lapse in Leavitt's treatment for HIV, the defendants refused to expedite the matter and denied his grievance.  In all, the grievance process lasted another 11 weeks before Leavitt finally received his medications.  During this time, Costigan held onto the

10

grievance for a month and denied it even though the issue of Leavitt's medication was still unresolved and absent any indication from the prison health care providers that a resumption of the medication was imminent. Merrill, in turn, sat on the grievance appeal for another entire month. He eventually denied it based on a report that prescriptions had been issued by the clinic, but not based on information that prison health care providers had actually supplied the medications in question. The report on which Merrill purportedly relied gave no indication that the medications had commenced even though it was written five days after the prescriptions issued. In other words, Merrill denied Leavitt's grievance appeal more than two months into the grievance process based on information that Leavitt's medications were still not being supplied. In light of the seriousness of the condition, HIV, this plodding administrative approach to the grievance process despite over a year's worth of past delay, generates a genuine issue of material fact whether Costigan and Merrill were deliberately indifferent to a serious medical need. Accordingly, I recommend that the Court deny the request of Defendants Costigan and Merrill that summary judgment enter in their favor on count I of the second amended complaint.[3]

**B.     Count II—Title II of the ADA**

Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The rights conferred by Title II extend to inmates in state prisons. Penn. Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998). Because

---

[3]     The objective seriousness of Leavitt's medical condition was not the subject of the instant motion for summary judgment, which these defendants filed well in advance of the dispositive motions deadline. It may be that summary judgment will be called for against all of the claims at issue, depending on the showing that Leavitt can make with respect to the medical side of his case, but the instant motion is about deliberate indifference and the defendants' response to Leavitt's plea for administrative intervention, given the circumstances, could fairly be described as deliberately indifferent.

11

"[a]ccess to prescription medications is part of a prison's medical services," the denial of such medications falls within the ambit of the ADA. Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 286-87 (1st Cir. 2006) (citing United States v. Georgia, 546 U.S. 151, 157 (2006)). With regard to Leavitt's claim under Title II of the ADA, he must demonstrate (1) that he is a qualified individual with a disability; (2) that he was denied the benefit of a public entity's services; and (3) that the denial of services was due to his disability. Id. at 283. In order to recover monetary damages, a Title II plaintiff must also establish that the state officials harbored discriminatory intent. Duvall v. County of Kitsap, 260 F.3d 1125, 1138 (9th Cir. 2001).

      The defendants argue that they are entitled to judgment as a matter of law because there is no evidence that they "acted with personal animosity or discriminatory animus toward the plaintiff, or in the alternative, knew that the plaintiff was not receiving his HIV medication." (Mot. at 6.) The assertion that they did not know that Leavitt was not receiving his medication is a surprising one. The obvious implication of both Leavitt's grievance and the memoranda sent to the defendants in response to it is that Leavitt was not then receiving his medications. The defendants also observe that a claimant under Title II may demonstrate intentional discrimination by showing that the defendant acted with at least deliberate indifference. (Mot. at 5, citing Bartlett v. New York State Bd. of Law Examiners, 156 F.3d 321, 331 (2d Cir. 1998).) This is an accurate statement of the law. See also Duvall, 260 F.3d at 1139; Daniel v. Levin, 172 Fed. Appx. 147, 150 (9th Cir. 2006) (unpublished). What has already been said in regard to deliberate indifference to a serious medical need may be said with equal force in regard to deliberate indifference to the deprivation of Leavitt's right to the prison's health care services in connection with a serious medical need. As a result, the argument that the defendants assert in support of their request for summary judgment on count II is not a persuasive one.

Moving beyond the arguments asserted by the defendants, the law does not provide for liability under Title II of the ADA for public employees in their individual capacities. Rather, it prohibits discrimination on the part of a public entity with respect to public programs. The term "public entity" does not include individuals. 42 U.S.C. § 12131(1); see Miller v. King, 384 F.3d 1248, 1277 (11th Cir. 2004); Jordan v. Delaware, 433 F. Supp. 2d 433, 442 (D. Del. 2006); Daniel, 172 Fed. Appx. at 149; see also Kiman, 451 F.3d at 290 (1st Cir.) (collecting additional opinions so holding, but withholding judgment on the issue). Consequently, whatever claim remains against Costigan and Merrill is limited to an official capacity claim.

## Conclusion

For the reasons set forth above, I RECOMMEND that the Court DENY the Motion for Summary Judgment of Defendants Costigan and Merrill (Doc. No. 45).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within ten (10) days of being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

January 13, 2009