UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RAYMOND D. LEAVITT )<br>   Plaintiff, )<br>)<br>)<br>v. )<br>)<br>)<br>CORRECTIONAL MEDICAL )<br>SERVICES, INC., et al. )<br>   Defendants, ) | Civil Action<br>Docket No. 1:08-CV-132 |

### DEFENDANT ALFRED CICHON'S REPLY MEMORANDUM TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

It has always been Alfred Cichon's practice to treat patients with HIV with an understanding that their condition warrants medical treatment and it was with this understanding that he attempted to treat Raymond Leavitt. These facts are undisputed[1]. Leavitt asserts other "facts" to challenge Cichon's statement that he intended to treat Raymond Leavitt. Alfred Cichon recognizes that the Court cannot resolve disputed facts at the summary judgment stage. It is respectfully submitted that to the extent that any factual disputes exist, they are not "material." *McCarthy v. Northwest Airliens, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995)

---

[1] In his Response to Alfred Cichon's Statement of Material Facts, the Plaintiff, in Paragraph 37, denies this statement. However, his Response contains no record references supporting this denial. It simply contains the statement "denied." By failing to properly controvert this statement by providing record references, the statement is deemed admitted. Local Rule 56(f). Putting aside for a moment the ramifications of this ineffective denial, other admissions by the Plaintiff to Alfred Cichon's statement of material facts demonstrate that Alfred Cichon intended to treat Raymond Leavitt for his HIV disease.

*Leavitt v. Correctional Medical Services, Inc., et al.*
Defendant Cichon's Reply Memorandum to Plaintiff's Opposition to Motion for Summary Judgment
Page 1 of 9

First, Leavitt contends that Alfred Cichon told him that because the jail was small that it was not financially able to pay for expensive medications for inmates and that Leavitt would have to wait for HIV treatment until he was transferred to the Maine State Prison.  Alfred Cichon never made these statements.  (Defendants' Joint Reply to Plaintiff's Statement of Facts at ¶¶10-11)(hereinafter referred to as "Joint Reply at ¶___")  Moreover, contrary to the suggestions by Leavitt, Cichon did not consider costs in making decisions with regard to the treatment of HIV.  While it was his company that provided the medical services to the jail, it was the jail which paid for testing, consultations and lab fees, and the jail had never advised Cichon about keeping these costs down.  (Joint Reply at ¶15)  Further, all labs requested by Cichon occurred after he allegedly made these statements.

In all likelihood the conversation that Leavitt recalls was one regarding treatment for hepatitis C.  Although Leavitt does not recall the discussion, Cichon explained that that Leavitt had told him he had hepatitis C and requested treatment.  The Plaintiff has admitted this fact.  Cichon told Leavitt that hepatitis C was not something that would be treated at the jail because a patient must be sober for at least 6 months to institute treatment.  He explained that Leavitt would need a physical evaluation to determine if he could tolerate the treatment as well as a mental evaluation to determine his ability to undertake this rigorous treatment.  Cichon told Leavitt that <u>this</u> treatment would most likely be started when Leavitt arrived at the prison.  Further, Cichon did not begin testing for this condition because it has been his experience in the past that the prison does not necessarily accept test results performed at the jail and will simply retest.  (Joint Reply at ¶13)

*Leavitt v. Correctional Medical Services, Inc., et al.*
Defendant Cichon's Reply Memorandum to Plaintiff's Opposition to Motion for Summary Judgment
Page 2 of 9

Further, with regard to Mr. Leavitt's contention that Cichon stated that he could delay HIV treatment until he was transferred to the Maine State Prison, Cichon denies making that statement. Mr. Leavitt has admitted that at the time of his October 5, 2006 examination neither he nor P.A. Cichon knew when Leavitt would be transferred to the Maine State Prison. (Joint Reply at ¶¶10-11)

It was the treatment for hepatitis C that involved a discussion of unreasonable costs, and involved a discussion of delaying treatment, not a discussion of Mr. Leavitt's HIV. Alfred Cichon does not contend that Mr. Leavitt's inability to recall the discussion is a result of any intent to deceive. Rather, it may be attributed to Leavitt being a poor historian, as his own expert has conceded. (Joint Reply ¶4) Regardless, Leavitt's allegation is not material to the Court's evaluation of Cichon's motion. As the adage states, "actions speak louder than words," and the undisputed actions of Alfred Cichon demonstrate that he intended to treat Raymond Leavitt for his HIV disease and that he undertook steps to do so.

First, it must be noted that Alfred Cichon did not interrupt Leavitt's course of antiretroviral therapy as the Plaintiff has suggested. At the time Alfred Cichon first examined Raymond Leavitt, he had been off medications for at least one month. Dr. Pinsky, the defendants' expert, has noted that this situation presented a completely different scenario from a health care provider making a decision to stop therapy. When confronted with a patient who has experienced an interruption in treatment, the proper course of action is for the provider to obtain current blood levels to determine a patient's CD4 count and viral load, as well as other blood parameters such as a CBC differential, to obtain past medical records to determine if the patient is in fact HIV positive, to

*Leavitt v. Correctional Medical Services, Inc., et al.*
Defendant Cichon's Reply Memorandum to Plaintiff's Opposition to Motion for Summary Judgment
Page 3 of 9

determine their prior medications and any complications with those medications, and to determine their compliance with taking those medications.  (Plaintiff's Response to Defendant Chichon's Statement of Material Facts at ¶¶10, 18)(hereinafter referred to as "Plf Response ¶__")

After learning from Raymond Leavitt that he was HIV positive, Cichon discussed Leavitt's medical condition with him.  Admitted.  (*Id*. at ¶12)  He asked Leavitt for the names of the pharmacies where he had received his medications.  Admitted.  (*Id*.)  He asked Leavitt where he had previously received treatment.  Admitted.  (*Id*.)  He entered an order for Leavitt to return to the medical clinic to have blood drawn to evaluate Leavitt's CBC differential, CD4 count and to check his viral load.  Admitted.  (*Id*. at ¶13)  He ordered the medical staff to obtain records from each of the different facilities where Mr. Leavitt had been treated.  Admitted.  (*Id*. at ¶14)  Leavitt has admitted that Cichon could not immediately reinstate Leavitt's HIV medications without this information.  (*Id*. at ¶15)  Further, he has admitted that it was the proper course of action to defer the start of treatment until all of this information had been gathered.  (*Id*. at ¶19)

Pursuant to his orders, Leavitt's blood was drawn.  Admitted.  (*Id*. at ¶20) Pursuant to his orders, Leavitt's medical records were obtained.  Admitted.  (*Id*. at ¶21) P.A. Cichon reviewed the records from the Androscoggin Jail.  Admitted.  (*Id*. at 23) These facts are all undisputed and clearly document that it was Alfred Cichon's intention to treat Leavitt's HIV during the course of his incarceration at the York County Jail.

Ordinarily when medical records and test results come back to the medical office at the jail, they are placed on a clip board for Cichon's review.  Admitted.  (*Id*. at ¶22)  In an interesting twist, Leavitt denies that P.A. Cichon reviewed the CD4 count test results,

*Leavitt v. Correctional Medical Services, Inc., et al.*
Defendant Cichon's Reply Memorandum to Plaintiff's Opposition to Motion for Summary Judgment
Page 4 of 9

but contends that he may have seen the viral count test results. Leavitt does not have any factual basis to deny that Cichon reviewed the CD4 test results[2] and did not review the viral load test results. Instead he points to the fact that the Board of Licensure has issued certain letters of guidance to Alfred Cichon[3]. He asserts that the court may disregard Cichon's testimony based on the existence of these letters of guidance, arguing that they raise questions as to Cichon's credibility, and that the Court may consider these letters in deciding whether Cichon intended to treat Leavitt.

First, the determination of a witness' credibility is a jury function and not a function for the court. *Velázquez-García v. Horizon Lines of Puerto Rico, Inc.*, 473 F.3d, 11, 18 (1st Cir. 2007). In addition, Leavitt cannot rest on a mere attack on the credibility of Alfred Cichon without providing record support for his denial of these statements. "'[I]f a moving party has demonstrated the absence of a genuine issue of material fact…concerns regarding the credibility of witnesses cannot defeat summary judgment. Instead, the nonmoving party must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *The Butcher Company, Inc. v. Bouthot*, 124 F.Supp.2d 750, 752 (D. Me. 2001).

Second, as set forth above, the undisputed facts demonstrate that Cichon intended to treat to Raymond Leavitt and began to do so. Cichon acknowledged that the care given to Mr. Leavitt was not optimal. Unfortunately the dynamics of the prison population are such that health care providers have a constantly changing patient base.

---

[2] Cichon did testify in his deposition that he did not receive either test result. However, after his deposition, Cichon's counsel received a copy of the jail's records regarding Mr. Leavitt. These records contained a CD4 report initialed by Cichon. Although he did not recall seeing these results, Cichon corrected his deposition testimony in his affidavit. (Joint Reply at ¶27)

[3] It is important to note that Letters of Guidance are merely that. They are issued by the Board of Licensure to provide non-disciplinary guidance to medical providers.

*Leavitt v. Correctional Medical Services, Inc., et al.*
Defendant Cichon's Reply Memorandum to Plaintiff's Opposition to Motion for Summary Judgment
Page 5 of 9

Had Mr. Leavitt requested any further medical treatment, Cichon's oversight would have been corrected. However, Leavitt did not do so. He remained silent throughout the remainder of his stay at the jail and never asked for nor sought any treatment related to his HIV. Given that Mr. Leavitt was not immediately placed back on medications when he did ultimately go see a specialist, it is unclear that he would have been placed back on medications during the course of his incarceration at the York County Jail. Cichon concedes that the referral should have been made. Nevertheless, his inadvertent failure to make the referral does not rise to the level of deliberate indifference[4].

Furthermore, despite his effort to create a question of fact[5], there is no credible evidence that Leavitt sustained any harm as the result of Cichon's delay in reinitiating antiretroviral therapy. As to short term harm, Leavitt argues that he experienced certain symptoms while at the York County Jail including fatigue, malaise and vomiting. Not all of the complaints identified by Leavitt are symptoms of HIV disease. (Joint Reply ¶4) Second, Mr. Leavitt can provide no record evidence that he experienced these symptoms at the jail. The only record evidence that exists indicates that Leavitt did not have a fever at the time of his October 5th examination and that his examination was in all respects

---

[4] As a pretrial detainee, Mr. Leavitt is entitled to protection pursuant to the Fourteenth Amendment. However, the standard to be applied is the same as that used in Eighth Amendment cases. *Burrell v. Hampshire County*, 307 F.3d 1, 7 (1st Cir. 2002)

[5] Leavitt argues that there is a genuine issue of material fact as to whether Leavitt was regularly on medication when he first entered the York County Jail in September of 2006. That is not a correct statement. Leavitt has conceded that the medical records indicate that Mr. Leavitt had not been compliant with taking his HIV medications prior to September 6, 2006 and that he had not received his medications on a continuous basis from January 4, 2006 through September 6, 2006. (Plf Response ¶25) The fact that is material to this motion, and to which there is no genuine issue is that at the time P.A. Cichon first saw Mr. Leavitt on October 5, 2006, Leavitt had been off medications for at least one month. Mr. Leavitt's compliance with his treatment regime prior to his incarceration at the York County Jail is not a "material" fact in that the resolution of this issue does not have the potential to change the outcome if resolved in Leavitt's favor.

*Leavitt v. Correctional Medical Services, Inc., et al.*
Defendant Cichon's Reply Memorandum to Plaintiff's Opposition to Motion for Summary Judgment
Page 6 of 9

normal. (Plf Reponse ¶¶6, 7)  Nor can Leavitt provide any expert testimony that he was symptomatic while at the Jail or that any symptoms were attributable to the failure to initiate antiretroviral therapy.  To the contrary, his expert testified Leavitt did not experience symptoms of active HIV disease at that time (Cichon SOMF ¶38 -41) and that Leavitt was a poor historian. (Joint Reply ¶4)   Without this expert testimony establishing a connection between his alleged symptoms and the treatment rendered at the Jail, Leavitt has not generated a material issue of fact as to whether he experienced short term harm.

Finally, on the issue of permanent harm, Cichon will not reiterate all of the arguments set forth in the Motion to Exclude Plaintiff's expert, which he incorporates herein.  Suffice it to say that Dr. Valenti may continue to argue that Leavitt's viremia likely caused permanent damage to his CD4 subsets, but he has no support in the medical literature to make this statement and this testimony with regard to the period of time of Leavitt's incarceration at the York County Jail is internally inconsistent.  First and foremost, Leavitt since beginning antiretroviral therapy at the Maine State Prison has achieved full immune recovery.  While he did experience a drop in his CD4 count in February of 2009, that drop was in all likelihood due to treatment for hepatitis C as opposed to representing any progressive impairment of his immune function.   In fact, since stopping treatment for hepatitis C, Leavitt's CD4 counts have rebounded into the normal range. (Joint Reply ¶159)

## Conclusion

For the foregoing reasons, and for the reasons set forth in the memorandum in support of the motion for summary judgment, it is respectfully submitted that this Court enter summary judgment for the Defendant Alfred Cichon on the Plaintiff's Complaint.

*Leavitt v. Correctional Medical Services, Inc., et al.*
Defendant Cichon's Reply Memorandum to Plaintiff's Opposition to Motion for Summary Judgment
Page 7 of 9

It should be noted that the Plaintiff concedes that the Defendant is entitled to judgment on the ADA claim.

Respectfully submitted this 6th day of November, 2009 at Portland, Maine.

    /s/ Paul C. Catsos
Paul C. Catsos, Esq.
Attorney for Defendant Alfred Cichon

Thompson & Bowie, LLP
Three Canal Plaza
P.O. Box 4630
Portland, ME 04112
pcatsos@thompsonbowie.com

*Leavitt v. Correctional Medical Services, Inc., et al.*
Defendant Cichon's Reply Memorandum to Plaintiff's Opposition to Motion for Summary Judgment
Page 8 of 9

UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

**CERTIFICATE OF SERVICE**

  I hereby certify that on November 6, 2009, I electronically filed Defendant Alfred Cichon's Reply Memorandum To Plaintiff's Opposition To Defendants' Motions For Summary Judgment with the Clerk of Court using the CM/ECF system which will send notification of such filing(s) to the following:

**Owen B. Pickus, Esq.**
**Elliott L. Epstein, Esq.**
Pickus & Epstein, LLC
980 Forest Avenue, Suite 207
Portland, ME 04103
*owenpickus@pickusandepstein.com*
*ElliottEpstein@PickusandEpstein.com*

**Christopher C. Taintor, Esq.**
Norman, Hanson & DeTroy
415 Congress Street
P. O. Box 4600
Portland, ME 04112
*ctaintor@nhdlaw.com*

**Martha J. Hallisey-Swift, Esq.**
Maine Attorney General's Office
State House Station 6
Augusta, ME 04333
*Martha.Hallisey-Swift@maine.gov*

Dated: November 6, 2009         */s/ Paul C. Catsos*
                     Paul C. Catsos, Esq.
                     Thompson & Bowie, LLP
                     Three Canal Plaza
                     P.O. Box 4630
                     Portland, ME 04112
                     (207) 774-2500
                     pcatsos@thompsonbowie.com

*Leavitt v. Correctional Medical Services, Inc., et al.*
Defendant Cichon's Reply Memorandum to Plaintiff's Opposition to Motion for Summary Judgment
Page 9 of 9