UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RAYMOND LEAVITT, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CORRECTIONAL MEDICAL SERVICES, )<br>INC., et al., )<br>)<br>Defendants )<br>) | Civ. No. 8-132-B-W |

**ORDER ON MOTION TO EXCLUDE TESTIMONY (Doc. No. 107)
and MOTION TO STRIKE AFFIDAVIT (Doc. No. 143)**

Raymond Leavitt has filed a civil rights action seeking remedy for alleged denial of adequate medical care during the time he was a detainee at the York County Jail and an inmate at the Maine State Prison. Leavitt's complaint has a count under the Eighth Amendment of the United States Constitution and a count under Title II of the Americans with Disability Act (ADA). Three summary judgment motions have been referred to me for recommended decisions. In this order I address a motion to exclude testimony and a motion to strike an affidavit.

In his motion to exclude the testimony of August J. Valenti, M.D., Cichon argues "that it is irrelevant and … is not sufficiently grounded in the facts of the case." (Mot. Exclude at 3, Doc. No. 107.) Specifically, Cichon objects to Valenti's proposed testimony apropos standards promulgated by the World Health Organization and the United Nations with respect to care of the HIV positive prison population and how these standards were not in place at the York County Jail. (Id. at 4.) Cichon points out that the York County Jail is not a defendant in this action and that the Eighth Amendment constitutional inquiry is the only relevant standard for resolving Leavitt's claim against Cichon. (Id.) Cichon also insists that Valenti's proposed testimony that

Leavitt sustained harm as a result of any delay in his anti-viral medications while under the care of Cichon is speculative and unreliable.  (Id. at 7-11.)

Cichon can, indeed, rest assured that "this Court is well aware, the issue before the court is not whether the medical care provided at the jail was equal to that provided in the general community or whether the defendants met some 'standard of care.'"  (Mot. Exclude at 4.) I have not referenced the World Health Organization or the United Nations in the three recommended decisions on the pending dispositive motions.[1]  As it is clear from my recommended decision on the Cichon motion for summary judgment, I have applied the Eight Amendment deliberate indifference to medical care standard. As for the issue of sustained harm, I have considered the facts reliant on the Valenti opinion as to question of injury and have not excluded the 'testimony' for summary judgment purposes.  The motion to exclude is **DENIED**.  With respect to the Court's review of the recommendation on Cichon's motion for summary judgment, it can reconsider this determination when it conducts its review of the record.

For his part, Leavitt has filed a motion to strike aspects of the affidavit of Dr. Pinsky utilized by Cichon in his reply and by all the defendants in their joint reply to the statements of additional facts. (Leavitt Mot. Strike, Doc. No. 143.)  He explains:

> Dr. Pinsky's affidavit specifically references a September 10, 2009 laboratory report of Raymond Leavitt's CD4 count, which was not previously part of the evidentiary record. [Pinsky affidavit, paras. 9 – 11]. Dr. Pinsky seeks to explain the latest CD4 lab as further evidence that Leavitt's immune system has fully recovered and that, as a result, he has suffered no permanent harm from the prolonged delay in re-initiating his retroviral therapy. He also opines on the significance of a February 27, 2009 lab report, which was already part of the record when the Defendants initially filed their motions but which was not the subject of an affidavit in Defendants' initial motions. [Pinsky affidavit, paras. 3 –

---

[1] There was no such reference in the statements of facts.

8]. Plaintiff seeks to strike this Affidavit in its entirety and all references to it in Defendant's Reply Memoranda and Reply Statement of Material Facts.

(Leavitt Mot. Strike at 1-2.) The defendants have filed opposition memoranda. (Doc. Nos. 144, 145, 146.)

Acknowledging that there are no First Circuit (or Maine District Court) cases on point, Leavitt relies on a Maine Superior Court case, Wiley v. Mark Stimson Assocs., No. CV-99-558, 2001 WL 1710585, 2001 Me. Super. LEXIS 139 (Me. Super. Ct. June 29, 2001), which does to an extent support his position, and Pelt v. U.S. Bank Trust Nat'l Ass'n, Civ. A. 3:00-CV 1093-L, 2002 WL 31006139, 2002 U.S. Dist. LEXIS 16669 (N.D. Tex. Sept. 5, 2002). Assuming that the new evidence of Leavitt's most recent test is outcome determinative, the reasoning in Pelt is of little moment because in that case the motion to strike was granted on the grounds that the affidavit in question was not determinative of the summary judgment disposition. Id. at 31-32.

In the context of this trio of dispositive motions referred to me, I **DENY** the motion to strike. First, although the Local Rules do not expressly contemplate this type of evidence being submitted in the context of a reply, Magistrate Judge Cohen has explained:

> Local Rule 56(d) directs a movant replying to an opposition to a motion for summary judgment to file a reply statement of material facts "limited to any additional facts submitted by the opposing party," with denials and qualifications (if any) supported by appropriate record citations. So long as the reply statement is limited to those "additional facts," the introduction of new evidence in support thereof is entirely appropriate.

Uncle Henry's Inc. v. Plaut Consulting Inc., 240 F.Supp.2d 63, 71 (D. Me. 2003) (adopted recommended decision). At the very least, the determination of whether or not the court should consider this evidence is discretionary and is case-dependent. In terms of exercising this discretion with respect to summary judgment motions, the court must ask whether or not there is a genuine dispute of fact that justifies sending this case, or part of it, to trial. If the evidence in

3

question arises somewhere in the interstices between the filing of the dispositive motion and the resolution of that motion, it is not in the interest of a fair and efficient administration of justice to overlook it on a rule basis, unless there is a compelling reason to do so, such as some sort of culpable shortfall by the party presenting the evidence.  The evidence of the September 2009 tests could not have been produced by the defendants at an earlier stage in this litigation.[2]  If the evidence is truly outcome determinative, justice is not served by sending a case to trial when there is no factual basis to do so or by granting summary judgment if the new evidence creates a triable issue. With respect to this latter observation, I note that in Valenti's post-deposition affidavit he identifies the materiality of the September 2009 test results.   Therein he indicates that at the time of the affidavit Leavitt was due for another blood test in September 2009 and maintains that the results of that test, if still low, would indicate to me that he has likely suffered damage to his immune system, which will take longer to reconstitute itself, if it does at all, than if he had remained continuously on HAART from the time he was incarcerated at the York Jail in September 2006 or if his therapy had been re-initiated shortly thereafter.  (Valenti Aff. ¶ 18.) It seems clear that, if the results had shown a decline in his immunity, Leavitt would now be pressing for the Court's consideration of these test results given the looming question of proof of long-term injury.  Finally, Leavitt did elect to file an omnibus statement of additional facts which required the defendants to respond. The Pinsky Affidavit is part of that response and it addresses

---

[2]   With respect to the February 2009 test referenced in this motion, Leavitt, himself, sets forth the following additional fact: In his labs of February 27, 2009, Leavitt had a CD4 count of 252.  (SAMF ¶ 159.)  The defendants responded: The BioReference Lab Report issued March 1, 2009 with regard to a specimen collected February 27, 2009 indicates an absolute CD4 count of 252, but a percentage of CD4 cells of 36.6% which is not a decrease from the previous report of October 22, 2008, which reported a CD4 count of 463 but a CD4 percentage of 26%.  (Resp. SAMF ¶ 159; Pinsky Aff. ¶ 6.)  This is well within the parameters of a proper response.  The information on the September 2009 labs flows from this exchange.

an issue raised by Leavitt in his additional statement of fact concerning Leavitt's long-term prognosis.

## CERTIFICATE

Any objections to this Order shall be filed in accordance with Fed.R.Civ.P. 72.

*So Ordered.*

December 31, 2009                    /s/ Margaret J. Kravchuk
                                     U.S. Magistrate Judge